UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

MIGUEL TRIANA,

                                     Plaintiff,

              -against-                                    15 Civ. 5895 (RA) (GWG)

SODEXO, INC., NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, SEAN SHIVERS, and
ANDREA WILCOX,

                                     Defendants.

------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Miguel Triana ("Plaintiff"), a former dietician level one previously employed by defendant New York City Health and Hospitals Corporation ("H+H") at Harlem Hospital, commenced this action on July 28, 2015 alleging violations of 42 U.S.C. §§ 1983 ("1983"), 1981 ("1981"), as amended by the Civil Rights Act of 1991, the Fair Labor Standards Act, 29 US §§201, et seq.("FLSA"), the First Amendment to the United States Constitution ("First Amendment"), the New York City Human Rights Law §§8-107 et seq. ("NYCHRL"), and the New York Labor Law §§215, 740, and 741 ("Labor Law"). See Dkt. No. 1 ("Cmplt."). Plaintiff alleges that he was subjected to a hostile work environment and discriminated against based on his race and national origin, that he was not paid overtime for hours that he worked, that he was retaliated against for his speech, and that he was retaliated against for making complaints about tube feedings. See Cmplt.

Defendant H+H now moves for summary judgment after the close of discovery because the record demonstrates that Plaintiff's claims are without factual support and deficient as a matter of law.  At the outset, Plaintiff's claims are procedurally deficient for a number of reasons.  First, Plaintiff cannot maintain a § 1981 claim against H+H, as 1981 does not provide a separate right of action against State Actors. Moreover, to the extent that Plaintiff seeks to interpose a claim for municipal liability against H+H pursuant to 1983, he has failed to set forth facts sufficient to do so.

Furthermore, as demonstrated more fully in defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Deft's 56.1"), Plaintiff's job performance issues were identified and documented prior to any allegations of discrimination.  Notably, Plaintiff does not allege that any employee of H+H had discriminatory intent.  In addition, Plaintiff admits that his previous supervisor, against whom he makes no allegations of wrongful conduct, noted the same or similar job performance deficiencies as noted by Ms. Wilcox. Plaintiff was brought up on disciplinary charges and agreed to a 15 day suspension to resolve the claims against him. Plaintiff was again brought up on disciplinary charges and ultimately terminated. Plaintiff was terminated after a hearing in front of a neutral administrative law judge at the Office for Administrative Hearings and Trials ("OATH"). During that hearing, Plaintiff admitted to many of the allegations for which he was charged. Several of the charges that Plaintiff admitted put patient safety directly at risk.

Plaintiff's Labor Law claims are based on alleged complaints concerning the timeliness of tube feedings. Plaintiff was directly responsible for the conduct that led to the delayed tube feedings. This was noted by supervisors before and after his alleged complaints concerning the tube feedings. Plaintiff also failed to follow H+H policy for the making of

complaints. Plaintiff never told any H+H employee about his tube feeding complaints. In addition, Plaintiff never raised any of his complaints with anyone outside of H+H. Plaintiff did not notify his union or file a grievance. Plaintiff simply has no evidence that any decision maker at H+H was even aware of his alleged complaint, much less that anyone decision maker at H+H was imbued with retaliatory intent.

Plaintiff's discrimination claims are solely based on an alleged pattern of laughing at his accent and asking him to repeat himself. Plaintiff also only alleges that the discrimination began after Ms. Wilcox gave Plaintiff a negative performance review. Plaintiff never documented any of his allegations or filed a grievance or complaint about any of the alleged discriminatory acts. Plaintiff only alleges that Sodexo, Inc. employees, Sean Shivers and Andrea Wilcox, engaged in this behavior. Plaintiff has settled the claims "arising directly or indirectly from the actions or inaction" of Mr. Shivers and Ms. Wilcox.

The record amply demonstrates the existence of legitimate, non-discriminatory, and non-retaliatory bases for Plaintiff's termination, which, again, eviscerate any claims of discrimination or retaliation.  Additionally, Plaintiff cannot point to any evidence of pretext.

Plaintiff is unable to identify the speech he claims forms the basis for his First Amendment Claim. Lastly, Plaintiff claims that, for a period of time beginning in July 2013 and ending at some point in 2014, he was not paid for overtime hours that he worked. Plaintiff is unable to produce any accounting of the alleged hours worked and never made any contemporaneous records. H+H's records demonstrate that Plaintiff was properly paid. Plaintiffs time and pay records for the relevant time period conclusively show that Plaintiff was paid for any hours that he worked including when he worked overtime.

## STATEMENT OF RELEVANT FACTS

The Court is respectfully referred to Deft's 56.1, dated July 2, 2018 and the Declaration of William A. Grey, dated July 2, 2018 ("Grey Decl."), and the supporting evidence cited to therein for a statement of pertinent and material facts.

## PROCEDURAL HISTORY

On July 28, 2015, plaintiff commenced this action against Sodexo, Inc., H+H, Andrea Wilcox, and Sean Shivers. On October 5, 2015, Sodexo, Inc., Sean Shivers, and Andrea Wilcox filed an answer to the complaint. See Dkt. No. 19. H+H filed an answer to the complaint on October 5, 2015. See Dkt. No. 20.

On January 19, 2018, Plaintiff and Sodexo, Inc. entered into a "Settlement and General Release." See Deft's 56.1 ¶ 22. Although Plaintiff only entered into this agreement with Sodexo, Inc., the release language clearly indicates that it is intended to release more claims than just those directly between Sodexo, Inc. and Plaintiff. See Deft's 56.1 ¶¶ 22-34. Plaintiff has released all "claims rising directly or indirectly from the actions of" Sean Shivers and Andrea Wilcox. See Id.

## ARGUMENT

### POINT I

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter |of law." See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. den., 524 U.S. 911 (1998). Once the moving party meets its initial burden, the nonmoving party must come forward with specific facts to

show there is a genuine issue of material fact that must be resolved at trial.  See Celotex, 477

U.S. at 324; Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citing Fed.

R. Civ. P. 56[e]).  Although the Court must construe the facts in the light most favorable to the

plaintiff, a "mere scintilla" of evidence is insufficient to meet plaintiff's burden to establish a

genuine issue of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial."  Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).


## POINT II

### PLAINTIFF'S CLAIMS UNDER 1981 ARE IMPROPER AND MUST BE DISMISSED

When the defendant is a state actor, 42 U.S.C. § 1983 is the exclusive remedy for

violations of rights guaranteed under 42 U.S.C. § 1981. See Jett v. Dallas Indep. Sch. Dist., 491

U.S. 701, 733 (1989); see also Gladwin v. Pozzi, 403 F. App'x 603, 605 (2d Cir. 2010)

(plaintiff's § 1981 claims are "encompassed" by her § 1983 claims); Goodwine v. City of New

York, 15-CV-2868 (JMF), 2016 U.S. Dist. LEXIS 67794, 16 n. 1 (S.D.N.Y. May 23, 2016); Hill

v. City of New York, 136 F. Supp. 3d 304, 330 (E.D.N.Y. 2015) ("when the defendant sued for

discrimination in violation of § 1981 is a municipality . . . § 1983 supplies the exclusive remedy

for violations of rights guaranteed under § 1981"); Walker v. City of New York, 11 Civ. 2941

(KPF), 2014 U.S. Dist. LEXIS 41287, 24 n.6 (S.D.N.Y. Mar. 26, 2014); Bermudez v. City of

New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011). Moreover, in a recent decision, the

Second Circuit re-emphasized this point, and explicitly held that "§1981 does not provide a

separate private right of action against state actors." <u>Duplan v. City of New York</u>, 2018 U.S.

App. LEXIS 11116, 12 (2d. Cir. Apr. 30, 2018).

Plaintiff's 1981 cause of action must be dismissed.

### POINT III

### PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR MUNICIPAL LIABILITY PURSUANT TO 1983

Plaintiff's §1983 claim against defendant H+H should be dismissed because he

cannot establish that a custom or policy of H+H caused the alleged deprivation of his Fourteenth

Amendment right to equal protection or his First Amendment right of free speech.  <u>See</u> <u>Monell v.</u>

<u>Department of Social Services</u>, 436 U.S. 658, 690-91 (1978); <u>City of Canton v. Harris</u>, 489 U.S.

378 (1989).  Under §1983, a municipality may not be held liable solely on a theory of <u>respondeat</u>

<u>superior</u>.  <u>Monell</u>, 436 U.S. at 694-95.  Rather, a plaintiff must show "a direct causal link

between a municipal policy or custom, and the alleged constitutional deprivation."  <u>City of</u>

<u>Canton v. Harris</u>, 489 U.S. at 385.  <u>See also</u> <u>Cash v. County of Erie</u>, 654 F.3d 324, 333 (2d Cir.

2011).

Plaintiff cannot establish any of the four circumstances in which, under Supreme

Court jurisprudence, liability may be imposed upon a municipality under §1983.  First, he cannot

show that the alleged violations of his First and Fourteenth Amendment rights were caused by a

formal policy, officially promulgated or ordered by H+H.  <u>See</u> <u>Pembaur v. City of Cincinnati</u>,

475 U.S. 469, 480 (1986); <u>Monell</u>, 436 U.S. at 690.  Second, plaintiff cannot show that the

alleged violations of his First and Fourteenth Amendment rights were was caused by a single act

taken by an H+H official,, who, as a matter of state law, has final policymaking authority with

respect to the area in which the action is taken, namely personnel matters.  <u>See</u> <u>McMillian v.</u>

<u>Monroe County</u>, 520 U.S. 781, 785 (1997); <u>Pembaur</u>, 475 U.S. at 483-484.  Third, plaintiff

cannot show that the alleged violations of his First and Fourteenth Amendments were caused by a pervasive custom or practice approved of by the City or of which the City is or should be aware.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 130 (1985).  Fourth, there is no allegation, let alone evidence, that the alleged violation of plaintiff's First and Fourteenth Amendment rights were caused by the failure of H+H to train its employees rising to the level of deliberate indifference to the constitutional rights of those with whom City employees will come into contact.  See  City of Canton, 489 U.S. at 388; Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993).   Accordingly, defendant H+H is entitled to summary judgment on plaintiff's §1983 First Amendment and Fourteenth Amendment equal protection claims.

## POINT IV

### PLAINTIFF HAS WAIVED ANY CLAIMS ARISING FROM THE ACTIONS OR INACTIONS OF SEAN SHIVERS AND ANDREA WILCOX

Plaintiff only alleges that Sodexo, Inc. employees Sean Shivers and Andrea Wilcox engaged in discriminatory behavior. Furthermore, Plaintiff only alleges that he told Sean Shivers and Andrea Wilcox about his complaints concerning the timeliness of tube feedings. See Deft's 56.1 ¶ 143. Plaintiff never informed any employee of H+H about his tube feeding complaints or his allegation that he was retaliated against for complaining about the tube feedings. See Deft's 56.1 ¶ 144. Simply put, Plaintiff's 1983, NYCHRL, and Labor Law claims are all premised on the alleged actions or inactions of Sean Shivers and Andrea Wilcox. Plaintiff readily admits that no employee of H+H had the intent to discriminate against him. See Deft's 56.1 ¶ 132.

Plaintiff has settled the claims "arising directly or indirectly from the actions or inaction" of Mr. Shivers and Ms. Wilcox. See Deft's 56.1 ¶¶ 22-34. Since Plaintiff has released the claims concerning the only persons alleged to have discriminated against him his 1983, NYCHRL, and Labor Law claims must be dismissed.

## POINT V

### PLAINTIFF'S 1983 DISCRIMINATION CLAIMS ARE WITHOUT MERIT AS A MATTER OF LAW

Claims under 1983 are analyzed using the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010).  To establish a prima facie case of discrimination under 1983, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  Ruiz, 609 F.3d at 491-92.

If the plaintiff is able to establish a prima facie case, the burden of production – but not of persuasion – shifts to the defendant employer to set forth a legitimate, non-discriminatory reason for its action.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509-511 (1993).  Plaintiff at all times bears the ultimate burden of persuasion and thus, once defendant provides its legitimate reasons, plaintiff must demonstrate that defendant's justification is a pretext for unlawful discrimination.  Id. at 510-11; James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) ("[T]he employer will be entitled to summary judgment…unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination").

Plaintiff has failed to raise an inference of discrimination by H+H. Plaintiff's allegations of discriminatory acts are limited to Sean Shivers and Andrea Wilcox. Plaintiff admits that he had no problems at work prior to October 2013. See Deft's 56.1 ¶ 20.

Plaintiff's allegations against Mr. Shivers consist of Mr. Shivers allegedly laughing and saying "What you said? Man, I cannot understand you." <u>See</u> Deft's 56.1 ¶ 40. Mr. Shivers began working with Plaintiff in 2007. <u>See</u> Deft's 56.1 ¶¶ 18, 36. Plaintiff does not remember any alleged discriminatory statements by Mr. Shivers. <u>See</u> 5 Deft's 56.1 ¶ 40. Plaintiff and Mr. Shivers interacted on a weekly basis from 2007 to 2012. <u>See</u> Deft's 56.1 ¶ 36. During that timeframe, Mr. Shivers would occasionally not understand Plaintiff because of his accent. <u>See</u> Deft's 56.1 ¶ 37. Plaintiff did not find this discriminatory. <u>See</u> 5 Deft's 6.1 ¶ 38. Plaintiff simply alleges that Mr. Shivers, after 5 years of consistently acceptable behavior, inexplicably changed his behavior.

Ms. Wilcox became the clinical nutrition manager at Harlem Hospital, and Plaintiff's supervisor, in August of 2013. <u>See</u> Deft's 56.1 ¶ 20. Plaintiff had no problems with Ms. Wilcox until after she gave him a performance review rating him as "needs improvement." <u>See</u> Deft's 56.1 ¶¶ 45, 46, and 65. Plaintiff alleges that approximately a month after Ms. Wilcox's performance review she began telling him that she could not understand his accent, she would ask others what he said, and she would tell him to improve his language. <u>See</u> Deft's 56.1 ¶¶ 45, 46, and 65. Plaintiff offers no explanation as to why Ms. Wilcox would have changed her behavior after two and a half months.

It is "[well] settled that stray remarks by a non-decision maker are insufficient to establish a prima facie case of…discrimination," and neither Mr. Shivers nor Ms. Wilcox's alleged comments – even assuming they were made – amount to more than mere stray remarks that are insufficient to defeat H+H's motion. <u>Cai v. Wyeth Pharms., Inc.</u>, 2012 U.S. Dist. LEXIS 38484 at *21 (S.D.N.Y. Mar. 19, 2012); <u>see also</u> <u>Danzer v. Norden Systems</u>, 151 F.3d 50, 56 (2d Cir. 1998)("[s]tray remarks, even if made by a decision maker, do not constitute sufficient

evidence to make out a case of employment discrimination . . . such comments, without more, cannot get a discrimination suit to a jury."). See Soliman v. Deutsche Bank AG, 2004 U.S. Dist. LEXIS 9087, No. 03 Civ. 104 (CBM), 2004 WL 1124689, at *9 (S.D.N.Y. May 20, 2004) (isolated remarks such as "sand nigger" and "all blacks are good for is dancing" were insufficient to raise an inference of racial discrimination at prima facie stage). H+H was the decision maker concerning the allegations preferred against Plaintiff by Labor Relations. See Deft's 56.1 ¶ 93-95. The Chief Executive Officer at H+H, Ebone Carrington, was the decision maker concerning Plaintiff's termination. See Deft's 56.1 ¶ 130. Plaintiff does not allege that any Labor Relations employee or Ms. Carrington had any discriminatory intent.

Even if Plaintiff were to establish a prima facie case of discrimination, his claim still fails because H+H had ample legitimate business reasons for the actions complained of. The record is replete with Plaintiff's performance deficiencies. See Deft's 56.1 ¶¶ 50 through 129. Many of Plaintiff's job performance issues threatened or jeopardized the safety of patients. See Deft's 56.1 ¶¶ 96, 113, 114, and 127. Plaintiff's document performance problems predated, by a number of years, any allegations of discriminatory conduct. See Deft's 56.1 ¶¶ 84-89. Plaintiff agrees that Regina Hughes, his supervisor prior to Andrea Wilcox, viewed his performance as deficient in many of the same ways as Ms. Wilcox. See Deft's 56.1 ¶ 83. Plaintiff does not allege that he had any problems with, or allegations, against Ms. Hughes. See Deft's 56.1 ¶ 82.

Fatal to Plaintiff's claim is his admission that no H+H employee had any intent to discriminate. See Deft's 56.1 ¶ 132. Plaintiff has admitted that H+H's actions, from its initiation of charges and specifications by the labor relations department through his termination, were not motivated by discriminatory animus. See Deft's 56.1 ¶¶ 132.

Plaintiff is also unable to come forward with any evidence that H+H's actions were a mere pretext for discrimination. Plaintiff's admission of no discriminatory intent is fatal to such an allegation. In addition, Plaintiff has admitted to many of the allegations of poor job performance. See Deft's 56.1 ¶¶ 109-122.

Moreover, to the extent that Plaintiff disagrees with the findings of the independent OATH administrative law judge, such a disagreement with the conclusions of his supervisors would be insufficient to demonstrate discriminatory animus. See e.g. Gladwin v. Pozzi, 403 Fed.Appx. 603, 605-06 (2d Cir. 2010) (rejecting plaintiff's argument that the complaints against her were untrue, finding that "her allegations that the complaints were false, and that the disputes were caused by different reasons than those advanced by [Defendants], do not support a finding of discriminatory animus"); McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case…we are decidedly not interested in the truth of the allegations against the plaintiff.  We are interested in what motivated the employer; the factual validity of the underlying imputation against the employee is not at issue"). Indeed, [i]t is well settled that courts in discrimination cases should not serve as "super-personnel departments," reviewing employer disciplinary decisions." Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 454 (S.D.N.Y. 2013) (aff'd 2014 U.S. App. LEXIS 23451 (2d Cir. Dec. 11, 2014).

## POINT VI

## PLAINTIFF'S 1983 HOSTILE WORK ENVIRONMENT CLAIMS ARE WITHOUT MERIT AS A MATTER OF LAW

"Because there are no clearly articulated standards in this Circuit with respect to hostile work environment claims under § 1983 we must look to Title VII for significant guidance." Dawson v. county of Westchester, 351 F.Supp. 2d 176, 194 (S.D.N.Y. 2004). In order

to establish a hostile work environment Plaintiff must show that H+H's conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17 (U.S. 1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (U.S. 1986)) (internal brackets and quotation marks omitted). "The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace." Adeniji v. Administration for Children's Services, 43 F.Supp. 2d 407, 422 (S.D.N.Y. 1999). "All of the circumstances must be considered; a reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it." Adeniji at 422.

"Conduct that is 'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment'" is insufficient to establish a Title VII discrimination claim. Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997).

As discussed supra, the allegations by Plaintiff are vague, illusory, and were not made by any H+H employees. Plaintiff only alleges that Ms. Wilcox would ask about his accent four times a month. See Deft's 56.1¶ 49. Clearly, Plaintiff's allegations do not rise to the level of a hostile work environment. This is further supported by the fact that Plaintiff was aware that he could file a grievance concerning his allegations and chose not to file such a grievance. See Deft's 56.1 ¶ 91.

## POINT VII

## PLAINTIFF'S NYCHRL DISCRIMINATION
## CLAIMS FAIL AS A MATTER OF LAW

Courts must analyze NYCHRL claims separately and independently from any federal and state law claims. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). However, the Second Circuit has long held that "[t]he NYCHRL is not a

general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences." *Id.* at 113.

Under the NYCHRL, a plaintiff must "show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, nondiscriminatory motives to show that the conduct was not caused by discrimination." See Camarda v. City of New York, 2015 U.S. Dist. LEXIS 123784, 14 (E.D.N.Y. Sept. 16, 2015) (citing Mihalik, 715 F.3d at 110 n.8.). Summary judgment may be granted when "no jury could find the defendant liable under any of the evidentiary routes – McDonnell Douglass, mixed motive, direct evidence, or some combination thereof." Camarda, at 14 (quoting Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 41 (1st Dep't 2011)). However, where a plaintiff is unable to raise a triable issue of fact, summary judgment on all discrimination claims is appropriate." See Camarda, at 15.

As noted supra, Plaintiff's admission that no H+H employee had a discriminatory intent is fatal to this claim. In addition, the record is replete with legitimate, non-discriminatory motives to show why H+H terminated the Plaintiff's employment. See Deft's 56.1 ¶¶ 50-127. In addition, Plaintiff's admissions at OATH that he acted in a manner that risked the safety and health of multiple patients provide irrefutable evidence that Plaintiff was terminated for job performance reasons. See Deft's 56.1 ¶ 109-122. No rational juror could conclude that H+H treated Plaintiff less well than other employees based on his race or national origin.

## POINT VIII

## PLAINTIFF'S NYCHRL HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW

"The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." Bermudez v. City of New York, 783 F.Supp. 2d 560, 579 (S.D.N.Y. 2011), quoting Williams v. New York City Hous. Auth., 61 A.D.3d 62 (N.Y. App. Div. 2009). To survive summary judgment Plaintiff needs to show the existence of unwanted national origin or race based conduct. See id. at 579.  "Nonetheless, even under the NYCHRL, petty, slight, or trivial inconvenience[s] are not actionable." Id. at 579 (internal citations and quotations omitted.)

As noted above, Plaintiff's allegations do not rise above the level of petty slights or trivial inconveniences. In addition, Plaintiff will not be able to show that any employee at H+H treated him differently because of his race or national origin. This is because Plaintiff admits that no employee of H+H had a discriminatory intent. See Deft's 56.1 ¶ 131. This combined with Plaintiff's extremely poor work performance clearly shows that the conduct of H+H employees towards Plaintiff was motivated by his poor work performance.

## POINT IX

### PLAINTIFF'S   LABOR   LAW   215   CLAIM FAILS AS A MATTER OF LAW

"To establish a prima facie case of retaliation under this provision, a plaintiff must be able to show that, "while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 238-239 (S.D.N.Y. 2013) quoting Higueros  v. New York State Catholic Health Plan, Inc., 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007).  "Further, there must be a nexus between the employee's complaint and the employer's retaliatory action."

Id. at 239. "Once the plaintiff establishes a prima facie case of retaliation under Section 215, the burden shifts to the defendant to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions." Id. at 239. "The plaintiff must then persuade the finder of fact that the proffered explanation is pretextual." Id. at 239.

Plaintiff alleges that he made complaints about tube feeding issues in May of 2014. See Deft's 56.1 ¶ 133. Plaintiff's allegation is that the tube feedings were not happening in a timely manner. See Deft's 56.1 ¶ 134. However, Plaintiff's very job responsibility was to timely assess patients for their dietary needs. See Deft's 56.1 ¶¶ 135-136. This was a portion of his job that he was particularly poor at performing. Regina Hughes noted that Plaintiff was not timely in his nutrition assessments and reassessments as far back as 2008. See Deft's 56.1 ¶ 53. Between August 2014 and January 2015 Plaintiff failed to accurately or timely asses at least 12 patients. See Deft's 56.1 ¶ 126. Plaintiff understood that his failure to perform timely assessments was causing the very condition of which he complained. See Deft's 56.1 ¶¶ 135-136. The law cannot be read to provide a safe harbor for incompetent employees so long as they complain to their supervisors about their own documented malfeasance. In fact, H+H acted appropriately by first suspending Plaintiff for his performance deficiencies and then terminating Plaintiff after seeing that his performance did not improve.

Plaintiff cannot show that any of H+H's actions were motivated by a retaliatory intent. First, Plaintiff never complained to any H+H employee. See Deft's 56.1 ¶¶ 142, 144. Second, H+H policy was for Plaintiff to report to the director of the facility if the issue was not resolved. See Deft's 56.1 ¶ 140. Plaintiff failed to make any report to the director of the facility. See Deft's 56.1 ¶ 142. Third, the evidence of Plaintiff's poor performance is overwhelming and even admitted by Plaintiff. See Deft's 56.1 ¶¶ 109-122. There simply is no evidence of pretext.

## POINT X

### PLAINTIFF'S LABOR LAW 740 AND 741 CLAIMS FAIL AS A MATTER OF LAW

"Labor Law § 740 is triggered only by a violation of a law, rule, or regulation that creates and presents a substantial and specific danger to the public health or safety." Vail-Ballou Press, Inc. v. Tomasky, 266 A.d.2d 662, 663 (N.Y. App. Div. 1999); see also Bordell v. General Elec. Co., 208 A.D.2d 219 (N.Y. App. Div. 1995). In addition, Plaintiff must show that the termination was retaliatory. As discussed supra, Plaintiff was terminated for his own admitted poor performance. Plaintiff cannot show any causal connection between his alleged complaint in May 2014 and his termination. More importantly, Plaintiff has not shown a violation of a rule, law, or regulation concerning his complaint of late tube feedings. Plaintiff is not protected under Labor Law § 740 based on a "reasonable belief" that a rule, regulation, or law has been violated. See Bordell, 220. Plaintiff must show that he complained about a policy or practice of the employer that is in violation of the law. Id. at 220.

Plaintiff's Labor Law § 741 claim also fails as a matter of law. "Section 741 provides the employer with a defense if "the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section." Geldzahler v. New York Med. College, 746 F.Supp. 2d 618, 633 (S.D.N.Y. 2010), quoting N.Y. Lab. Law § 741(5). In Timberlake v. New York Presbyterian Hosp., the Court held that a Labor Law § 741 claim fails where a defendant supplies "ample evidence indicating that the decisions to reprimand Plaintiff and ultimate terminate [his] employment were based on [his] insubordination and deficient performance." 2009 U.S. Dist. LEXIS 89949, 17 (S.D.N.Y. 2009).

In the present case there is more than "ample evidence" indicating that Plaintiff was terminated for his years of poor performance. See Deft's 56.1 ¶¶ 50-128. Plaintiff, in

addition to failing to allege a violation of a law, rule, or regulation, also fails to show that his complaint would evidence a departure from the standard duty of care that would present a substantial or significant danger to be covered by § 741. Id. at 16. General complaints that tube feedings are simply insufficient to survive summary judgment.

## POINT XI

### PLAINTIFF'S FLSA AND LABOR LAW CLAIMS FOR FAILURE TO PAY OVERTIME FAIL AS A MATTER OF LAW

Section 207(a)(1) of the FLSA requires that an eligible employee who works in excess of 40 hours in a given workweek shall be compensated for the work in excess of 40 hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Therefore, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc.,, 711 F.3d 106, 114 (2d Cir. 2013).

A pleading that "theoretically put[s] [a plaintiff] over the 40-hour mark in one or another unspecified week (or weeks)" is insufficient.  Id.; see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192 (2d Cir. 2013) (finding that the complaint lacked "any allegation that Plaintiffs were scheduled to work forty hours in a given week," thereby affirming dismissal of FLSA overtime claims under the standard articulated in Lundy). The Second Circuit has also rejected the use of "bare-bones" or boilerplate complaints that merely regurgitate the applicable law.  See DeJesus v. HF Mgmt. Servs., 726 F.3d 85, 89 (2d Cir. 2013) (dismissing the complaint because plaintiff simply "repeat[ed] the language of the [FLSA]," without "estimat[ing] her hours in any or all weeks or provid[ing] any other factual context or content.").

Further, in <u>Lundy</u> the Second Circuit held that "[d]etermining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Lundy</u>, 711 F.3d at 114. As such, while the Court declined to make an approximation of overtime hours a *per se* pleading requirement, the Court remarked that "some courts may find that an approximation of overtime hours worked may help draw a plaintiff's claim closer to plausibility." <u>Id.</u> at fn 7.

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 361 (2d Cir. 2011). "However, at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." <u>Aponte v. Modern Furniture Mfg. Co.</u>, 2016 U.S. Dist. LEXIS 131408, 25-26 (E.D.N.Y. 2016). It is possible for a plaintiff "to meet this burden through estimates based on his own recollection." <u>Kuebel</u>, 362. The wage and overtime compensation provisions of FLSA and the NYLL are analogous. See <u>D'Arpa v. Runway Towing Corp.</u>, 2013 U.S. Dist. LEXIS 85679 (E.D.N.Y. 2013).

Plaintiff alleges that he was not paid overtime for a period of July 2013 through sometime in 2014. <u>See</u> Deft's 56.1 ¶¶ 149, 150. Plaintiff's pay and time records conclusively show that he was properly paid for all the time he worked during this time period. <u>See</u> Deft's 56.1 ¶ 154. The records clearly show that Plaintiff was paid overtime on August 16, 2013 and August 20, 2013, one month after he claims he began not receiving payments for overtime work. <u>See</u> Deft's 56.1 ¶ 154.

Even if Plaintiff were to prove that the records were inaccurate or inadequate, he maintains no way of even estimating the number of hours he claims to have worked. See Deft's 56.1 ¶ 152. Plaintiff cannot come to a more ascertainable number than "a lot." See id. Plaintiff's claim can do no more than "theoretically put h[im] over the 40-hour mark in one or another unspecified week . . . but h[is]allegations supply nothing but low-octane fuel for speculation, not the plausible claim that is required."  Lundy, 711 F.3d at 114-15. The Second Circuit in Lundy considered, and rejected, allegations of uncompensated time that occur "routinely" as insufficient to state a cause of action.  Id. at 114-15; see also Ramos v. City of New York Fire Dep't, 13 Civ. 9225 (KBF), 2014 U.S. Dist. LEXIS 66449, 20 (S.D.N.Y. May 9, 2014)("The single, offhand reference to the 40-hour requirement in the [Complaint], and to defendants' alleged overtime payment policies generally, do not substitute for well-pleaded allegations that any plaintiff has a viable FLSA overtime claim"). Bustillos v. Acad. Bus, LLC, 2014 U.S. Dist. LEXIS 3980, 10-11 (S.D.N.Y. Jan. 13, 2014) (plaintiff's allegation that his schedule "varied" and that he "would regularly work from 60 to 90 hours per week" did not suffice under Lundy and its progeny); Cromwell v. N.Y. City Health & Hosps. Corp., 2013 U.S. Dist. LEXIS 69414, 5-13 (S.D.N.Y. May 15, 2013) (dismissing the complaint despite allegations that the plaintiff "typically" worked five shifts per month, with an extra shift "approximately twice a month" and other uncompensated time, it "d[id] not point to any *particular* workweek . . . during which [he] worked uncompensated time more than 40 hours" (italics in original); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 2011 U.S. Dist. LEXIS 8585, at 3-4 (S.D.N.Y. Jan. 28, 2011) aff'd at 723 F.3d 192 (2d Cir. 2013) ("At minimum, [the Complaint] must set forth the approximate number of unpaid regular and overtime hours allegedly worked," as well as a time frame for when those hours were worked); Walz v. 44 & X Inc., 2012 U.S. Dist. LEXIS 161382,

12-13 (S.D.N.Y. Nov. 7, 2012) ("Even stating 'most weeks during the entire course of my employment, I worked at least two hours later than my shift, plus a two-hour meeting every day' would be enough detail for this Court ... [plaintiffs] should have some sense of ... whether they worked one, two, six, or eight hours of overtime")(emphasis added); Nichols v. Mahoney, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) ("Where a plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked, for which wages were not received.") (internal citations omitted).

Plaintiff, at this late stage in litigation, cannot even meet the burden on a motion to dismiss, much less show a disputed issue of fact requiring a jury trial.

## POINT XII

### PLAINTIFF'S FIRST AMENDMENT CLAIM MUST BE DISMISSED

A public employee asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant[s] took adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (citations omitted). Whether a public employee's speech is protected is determined by a two-step inquiry. First the Court must determine "whether the employee spoke as a citizen on a matter of public concern." Id., at 172 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). To make this initial determination, the Court must consider: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." Id. (citing Jackler v. Byrne, 658 F.3d 225, 228 (2d Cir. 2011)). "If the answer to either question is no, that is the end of the matter. If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry, commonly

- 20 -

referred to as the <u>Pickering</u> analysis: whether the relevant governmental entity 'had an adequate justification for treating he employee differently from any other member of the public based on the government's needs as an employer.'" *Id.* (quoting <u>Lane v. Franks</u>, 134 S.Ct. 2369, 2380 (2014)).

On the first question for consideration, speech addresses a matter of public concern "when it can fairly be considered as relating to any matter of political, or social or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 143 S.Ct. at 2380 (internal quotation and citations omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." <u>Connick v. Myers</u>, 461 U.S. at 138, 147-48 (1983). On the second question, whether the employee spoke as a citizen rather than solely as an employee, the court must determine: "(A) did the speech fall outside of the employee's 'official responsibilities' and (B) does a civilian analogue exist?" <u>Matthews</u>, 779 F.3d at 173.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." <u>Id</u>. (quoting <u>Garcetti</u>, 547 U.S. at 421). Such speech is "speech that "owes its existence to a public employee's responsibilities." <u>Weintraub v. Board of Education of the City School District of the City of New York</u>, 593 F.3d 196, 201 (2d Cir. 2010) (quoting <u>Garcetti</u>, 547 U.S. at 421), or, put another way, is "part-and-parcel of [the employee's] concerns about his ability to properly execute his duties." <u>Id</u>., 593 F.3d at 203. Speech may be pursuant to a public employee's official job duties "even though it is not required by, or included in, the employee's job description, or in response to a request by an employer." <u>Id</u>. "[C]ourts must examine the nature of the plaintiff's job

responsibilities, the nature of the speech, and the relationship between the two . . .[o]ther contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." Ross v. Breslin, 693 F.3d 300, 302 (2d Cir. 2012).

      The existence of a civilian analogue to the manner in which the public employee expresses his or her speech is not dispositive as to whether the employee spoke pursuant to her official duties, see Montero v. City of Yonkers, 224 F.Supp.3d 257, 269-70 (S.D.N.Y. 2016), but is relevant, as "it does bear on the perspective of the speaker - -whether the public employee is speaking as a citizen - - which is the central issue after Garcetti . . ." Weintraub, 593 F.3d at 204. "Speech has a 'relevant civilian analogue' if it is made 'through channels available to citizens generally.'" Matthews, 779 F.3d at 175 (quoting Jackler v. Byrne, 658 F.3d 225, 238 (2011)).

      In Matthews, a Police Officer expressed his concern to his superiors about an alleged arrest quota in his Precinct.  The Second Circuit found that the plaintiff did not speak pursuant to his official duties as a Police Officer, and stated that the "existence of a comparable civilian analogue for Matthews speech also supports our conclusion that he spoke as a citizen." Id., 779 F.3d at 175.[1]  There, the civilian analogue was monthly meetings of the Precinct's community council regularly attended by the plaintiff's supervisors and open to the public.  Id. As the court noted, "Matthews chose a path that was available to ordinary citizens who are regularly provided the opportunity to raise issues with the Precinct Commanders." Id. at 176.  In Weintraub, by contrast, where the Second Circuit held that a teacher spoke pursuant to his official job duties, the speech at issue was made in the form of a grievance, "for which there is no relevant civilian analogue." 593 F.3d at 203.  The Court concluded that the teacher's speech

---

[1] The issue of whether the plaintiff in *Matthews* spoke on a matter of public concern was not before the court because the District Court had determined that he spoke on a matter of public concern, and the defendants did not challenge that determination. *Id.*, 779 F.3d at 173-76.

was not protected by the First Amendment.  <u>Weintraub</u>, 593 F.3d at 205.  In the present case, there is no question that plaintiff's speech was made pursuant to his official duties, and only one of his alleged acts of speech.

The "objective inquiry" into whether a public employee spoke pursuant to his official duties is "a practical one."  <u>Weintraub</u>, 593 F.3d  at 202.  "Although no single factor is dispositive, courts consider several factors in determining whether public employee spoke pursuant to his official duties, including: (1) the plaintiff's job description; (2) the persons to whom the speech was directed; (3) whether the speech resulted from special knowledge gained through the plaintiff's employment; (4) whether the speech occurs in the workplace; and (5) whether the speech concerns the subject matter of the employee's job."  <u>Airday v. City of New York</u>, 131 F. Supp. 3d 174, 180 (S.D.N.Y. 2015).

Plaintiff's claim fails all three factors. Plaintiff's claim fails from the outset because he cannot identify the alleged First Amendment protected speech. <u>See</u> Deft's 56.1 ¶ 154. To the extent Plaintiff claims that his First Amendment claims involve the allegations concerning delayed tube feedings, this is clearly part of Plaintiff's job duties and responsibilities. <u>See</u> Deft's 56.1 ¶ 147. The First Amendment does not "shield[] from discipline the expressions employees make pursuant to their professional duties." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 426 (U.S. 2006). Lastly, Plaintiff can show no causal connection between any of his speech and his termination.

Plaintiff may argue that his pleading also gives rise to a claim that his witness statement that he gave to Maria Bryant makes up his first amendment claim also. <u>See</u> Deft's 56.1 ¶ 148. To the extend he does, his claims fail for the same reasons his complaints about tube feedings fail.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue an order granting their motion for summary judgment and dismissing plaintiff's Complaint in its entirety, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             July 2, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-184
New York, New York 10007
Telephone: (212) 356-1181
Email: wgrey@law.nyc.gov


By:    /s/ William A. Grey
         William A. Grey
         Senior Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF RELEVANT FACTS ........................................................... 4

PROCEDURAL HISTORY............................................................................... 4

ARGUMENT ..................................................................................................... 4

POINT I .................................................................................................. 4

PLAINTIFF WAS ON NOTICE THAT HE DID
NOT GET THE INSTRUCTOR OR ASSISTANT
PROFESSOR POSITION NO LATER THAN
JANUARY 28, 2011 ................................**Error! Bookmark not defined.**

POINT II ................................................................................................ 5

PLAINTIFF'S COMPLAINT IS PROPERLY
CONSTRUED AN ATTEMPT TO ENTER INTO
A NEW CONTRACT AND THUS IS BARRED
BY THE THREE-YEAR STATUTE OF
LIMITATIONS APPLICABLE TO SUCH
CLAIMS UNDER SECTION 1981 ................................................ 5

CONCLUSION............................................................................................... 24

Docket No. 14 Civ. 1593 (JPO) (JLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID OKOR,

Plaintiff,

-against-

BOROUGH OF MANHATTAN COMMUNITY
COLLEGE and CHAIM GINSBERG,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### *ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street, 2-102*
*New York, N.Y.  10007*

*Of Counsel:  William A. Grey*
*Tel:  (212) 356-1181*
*Matter No.:  2014-034251*

Bruce Rosenbaum,
William A. Grey,
    Of Counsel.