USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: DEC 05 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL TRIANA,

               Plaintiff,

v.

SODEXO, INC., NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION, SEAN SHIVERS and
ANDREA WILCOX,

               Defendants.

No. 15-CV-5895 (RA)

MEMORANDUM OPINION
AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Miguel Triana, a dietician formerly employed by Defendant New York City Health and Hospitals Corporation ("H+H"), brought this action against H+H and other defendants, since dismissed from this case, alleging employment discrimination, violations of the Fair Labor Standards Act ("FLSA"), and violations of various provisions of the New York Labor Law ("NYLL") and New York City Human Rights Law ("NYCHRL"). Plaintiff argues that Defendant subjected him to a hostile work environment and discriminated against him based on his race and national origin, that he was retaliated against for making complaints to and about his supervisors, and that he was not paid overtime for the amount of hours that he worked. H+H moves for summary judgment on all of Plaintiff's claims. For the reasons that follow, the motion is granted.

**Factual Background**

The following facts are taken from Defendant's 56.1 statement where they are undisputed, as well as the evidence submitted by the parties in connection with their motions.

The plaintiff, Miguel Triana, was born in Cuba and speaks with an accent. *See* Dkt. 104, Def.'s 56.1 Statement ¶¶ 2-3. In October 2001, Plaintiff became employed as a dietician level one at H+H's Harlem Hospital, a position in which he worked until January 22, 2015. *See id.* ¶¶ 4, 53. Triana's official work shift was from 7:00 a.m. to 3:00 p.m., five days a week. *See* Dkt. 100-1, Triana Deposition at 498. As a dietician level one, plaintiff's job responsibilities included making nutritional assessments; forming care and discharge plans for patients; monitoring patients for potential food and drug interactions; observing patients' dietary intake and providing them with nutritional information; and reporting problems to immediate supervisors as well as recommending ways to improve medical services. *See* Dkt. 100, Ex. K, Dietician Level I Job Responsibility Form. Plaintiff would assess approximately seventeen to twenty patients a day. *See* Dkt. 91, Ex. CC, OATH Report and Recommendation at 4.

At Harlem Hospital, all food and nutritional services are overseen by Sodexo, Inc., a food services and facilities management company, and all dieticians are formally employed and supervised by Sodexo. *See* Def.'s 56.1 Statement ¶¶ 8-11. Staff dieticians report to the Clinical Nutrition Manager, who in turn reports to the Director of Food Nutrition and Services. *See id.* ¶¶ 11-12.

From October 9, 2001 to August 2013, Plaintiff was directly supervised by Regina Hughes, who served as Clinical Nutrition Manager. *See id.* ¶ 13. From 2007 onward, Sean Shivers served as the Director of Food and Nutrition Services, and thus Hughes's immediate superior. *See id.* ¶ 16. Throughout this time period, Plaintiff interacted with Shivers on a weekly basis. *See id.* ¶ 18.

Beginning in 2008, Triana was disciplined by Shivers and Hughes for various infractions, which he attributes to Harlem Hospital being chronically understaffed. *See id.* ¶¶ 30-34. In

August 2013, Andrea Wilcox replaced Hughes as Plaintiff's direct supervisor. *See id.* ¶ 14. Shivers remained the Director of Food and Nutrition Services at Harlem Hospital, and was thus Wilcox's immediate superior. *See id.* ¶ 16.

Triana contends that, from the time Wilcox began as Plaintiff's immediate supervisor, she assigned dieticians, and especially dieticians of color, with more patients than they could handle, and, from August 2013 until sometime in 2014, she and Shivers refused to pay Plaintiff overtime when patient deadlines were not met. *See* Dkt. 101, Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 7(e), 21. Triana also testified that, because he was not vaccinated, Wilcox would make him wear a mask around certain patients, but did not demand that other unvaccinated nutritionists wear such equipment. *See* Triana Deposition at 721.

On October 9, 2013, Wilcox evaluated Plaintiff's job performance and issued him an overall rating of "needs improvement." Def.'s 56.1 Statement ¶ 45. Triana asserts that, shortly thereafter, Wilcox began commenting on Plaintiff's accent, telling him that she could not understand what Triana was saying, and that he needed to improve his English skills. *See id.* ¶¶ 26-28. Plaintiff stated that these conversations would occur around four times a month. *See id.* According to Triana, Shivers had also begun making fun of his accent at the end of 2012, and would occasionally join Wilcox in mocking him, which involved asking him to repeat things and then laughing at his (mis)pronunciations. *See* Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 22(a).

Plaintiff testified that, on November 19, 2013, he was in his office when he heard Maria Bryant, an African-American dietician, speaking with Wilcox in a "low voice." Triana Deposition at 527. Triana claims, in March 2014, he was asked by Wilcox to state, at a disciplinary hearing for Bryant, that Bryant had become disruptive and shouted at Wilcox during

3

their November 2013 conversation. *See id.*; Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 125(a). After Plaintiff supplied a written statement that "at no time did [he] hear Ms. Bryant shouting at Wilcox," *see* Dkt. 100, Ex. F, Triana asserts that Wilcox changed his job evaluation reviews from every three months to every month, and became more critical in her assessment of his job performance, *see* Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 125(a); Triana Deposition at 699. Plaintiff further testified that Andrea Clarke, a white dietician, performed similarly to himself but was never recommended for discipline. See Triana Deposition at 702-04; Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 43(e).

In May 2014, Plaintiff emailed Shivers and his superiors, stating that the Food Services Department was failing to provide timely tube feedings to patients at Harlem Hospital. *See* Dkt. 101, Ex. H. Triana contends that, in retaliation, Wilcox and Shivers sent him a memo falsely accusing Plaintiff of finishing work late because he was selling nutritional supplements. *See* Triana Deposition at 162. According to Triana, following his email expressing concern with the delayed tube feedings, he was subjected to even greater scrutiny from Wilcox and Shivers. *See* Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 125(b); Triana Deposition at 162.

On May 8, 2014, prior to Triana's email about the delayed tube feedings, Wilcox requested that Plaintiff be subject to a Step 1A disciplinary hearing.[1] *See* Def.'s 56.1 Statement ¶ 76. According to Wilcox, Triana had negligently put patients' potential safety at risk on at least four separate occasions, which needed to be addressed as soon as possible "in the best interest of the patient[s] and the hospital." Dkt. 91, Ex. W, June 12, 2014 Wilcox Memorandum. On September 8, 2014, following his disciplinary hearing, Triana agreed to a 15-day suspension

---

[1] A Step 1A hearing is triggered by a complaint or grievance filed by a petitioner with a Labor Relations Specialist. *See* Def.'s 56.1 Statement ¶ 73. This hearing is typically attended by the accused and the petitioner, who both provide their explanations of the accusations at issue. *Id.*

4

without pay. *See* Def.'s 56.1 Statement ¶ 78.

Triana returned to work on September 26, 2014. *See id.* ¶ 79. On October 30, 2014, Wilcox once again issued Plaintiff an overall job evaluation of "needs improvement," which stated that this assessment was based on his general tardiness, his need to review medical notes prior to seeing patients, and his failure to consistently monitor meal plans. *See* Dkt. 91, Ex. T. On January 9, 2014, Plaintiff was given a job rating of "unsatisfactory." *See* Def.'s 56.1 Statement ¶ 51. According to the accompanying evaluation, Triana had proven incompetent in performing his basic job functions, and continually failed to provide "responsible coverage for dieticians," address malnutrition and pressure ulcers, obtain "comprehensive histor[ies] of patients," provide nutrition education, and make "appropriate recommendations." *See* Dkt. 91, Ex. U.

On January 22, 2015, Plaintiff was suspended from work without pay for six months pending an investigation of his alleged employment infractions, and removed from his position as a dietician. *See* Def.'s 56.1 Statement ¶ 53. During his suspension, Plaintiff initiated this action.

**Procedural History**

On July 28, 2015, Triana brought suit against Sodexo, Inc., H+H, Sean Shivers, and Andrea Wilcox. *See* Dkt. 1, Complaint. First, Plaintiff alleged that Defendants had created a hostile work environment and discriminated against him based on his race and national origin in violation of 42 U.S.C. §§ 1981 and 1983 and the New York City Human Rights Law. *See id.* at 12. Although Triana does not claim that he was a perfect employee or did not commit any errors, he alleges that "[n]on-Hispanic, younger White female Dieticians [] made similar mistakes" to himself but were treated differently. Pl.'s Br. at 2. Second, Triana alleged that

5

Defendants had violated the Federal Labor Standards Act (FLSA) and New York Labor Law (NYLL) § 160 by refusing to pay him overtime compensation. *See* Complaint at 12. Third, Plaintiff maintained that, in violation of the First Amendment, he had been retaliated against for complaining to Shivers and Wilcox about improper tube feedings and for refusing to produce a witness statement against Bryant. *See id.* Finally, Plaintiff alleged violations of NYLL §§ 215, 740 and 741 against all three Defendants. *See id.* (alleging that Wilcox had regularly "pressed Triana and other dieticians" to recommend less tube feeding than was appropriate and retaliated against him when he complained about this improper care). Triana sought $2,000,000 in compensatory damages on each cause of action, punitive damages against Shivers and Wilcox, and an injunction restraining Defendants from continuing to discriminate and retaliate against him by continuing his suspension and termination. *See id.* at 15-16.

On August 5, 2015, Plaintiff was informed that he would undergo a second Step 1A conference for the employment infractions identified in his negative work evaluations. *See* Def.'s 56.1 Statement ¶ 80. This hearing was held on August 12, 2015, the determination of which was appealed by Triana to the New York City Office of Administrative Trials and Hearings ("OATH").[2] *See id.* ¶¶ 81, 84.

On August 1, 2016, while Plaintiff's OATH appeal was pending, Triana moved before this Court for a preliminary injunction and a temporary restraining order enjoining Defendants from suspending him, threatening to dismiss him, or continuing administrative proceedings for the purpose of terminating his employment. *See Triana v. Sodexo, et al.*, No. 15-CV-5895 (RA), at *1 (S.D.N.Y. Dec. 7, 2016). This Court denied Triana's motion on October 24, 2016. *Id.* at

---

[2] Employees may accept the findings of the Labor Relation Specialist, appeal this person's recommendation through their union's contractual grievance process, or appeal the Labor Relation Specialist's recommendation to OATH. *See* Def.'s 56.1 Statement ¶ 75.

6

*2. Plaintiff subsequently moved for a preliminary injunction, and the Court requested further briefing to determine whether Triana would suffer irreparable harm as the result of his termination. *Id.* On December 7, 2016, this Court determined that Triana had failed to demonstrate such harm, and denied his motion for a preliminary injunction. *See id.* (stating that "Triana's allegations of financial distress" and potential damage to his reputation did not constitute irreparable harm, especially given that he would still be eligible for health care following his termination).

On May 30, 2017, OATH administrative law judge Noel R. Garcia concluded that, from August 2014 to January 2015, Triana "had failed to perform accurate or timely assessments for at least 12 patients." *See* Dkt. 91, Ex. CC, at 26. On July 11, 2017, the Chief Executive Officer of H+H, Ebone M. Carrington, subsequently terminated Plaintiff's employment with Harlem Hospital. *See* Def.'s 56.1 Statement ¶ 110.

After considerable delay, the parties completed discovery in this case on August 25, 2017, *see* Dkt. 70, which included depositions of the various parties, *see* Dkt. 91, Exs. A, B, D, C, & E. On May 17, 2018, the Court approved a settlement between Plaintiff and Defendants Sodexo, Inc., Sean Shivers, and Andrea Wilcox, and dismissed these Defendants from the case. *See* Dkts. 88 & 89. H+H subsequently filed a motion for summary judgment on July 2, 2018; Plaintiff responded to the motion on August 22, 2018; and Defendant replied on September 7, 2018. *See* Dkts. 90, 102, & 103.

**Legal Standard**

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,'

7

and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts 'in the light most favorable' to the non-moving party." *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-CV-1950 (PAE), 2012 WL 5964393, at *2 (S.D.N.Y. Nov. 29, 2012) (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010)).

If the moving party meets its burden, "the party opposing summary judgment can defeat the motion for summary judgment 'only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial.'" *Id.* (quoting *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009)) (alterations in original). In other words, "[t]he movant has the burden of showing that there is no genuine issue of fact, but the [nonmoving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. "[T]he [nonmoving party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257.

## Discussion

H+H argues that it is entitled to summary judgment on all of Triana's claims. *See* Dkt. 102, Def.'s Brief. First, it contends that Triana cannot establish a claim for municipal liability pursuant to § 1983 against New York City's Health and Human Services Department because Sodexo, and not the Department, employed Wilcox and Shivers. *See id.* at 6. In any event, Defendant argues, Plaintiff has failed to raise an inference that these two individuals

discriminated against him or created a hostile work environment. *See id.* at 8-11. Second, Defendant asserts that Plaintiff's criticism of Harlem Hospital's tube feedings and his statement defending Bryant was made pursuant to his duties as a hospital employee, and was therefore not protected by the First Amendment. *See id.* at 20-24. Third, Defendant contends that Plaintiff's own pay and time records indicate that he was paid overtime in accordance with the FLSA and NYLL, and that Triana has produced no evidence to the contrary. *Id.* at 17-20. Finally, Defendant asserts that all of Triana's state law claims fail as a matter of law. *Id.* at 12-17.

For the reasons that follow, the Court agrees with Defendant that Plaintiff's claims either fail as a matter of law or are not supported in the record. Consequently, H+H's motion for summary judgment is granted.

### I. Plaintiff's Hostile Work Environment and Discrimination Claims under § 1981

Plaintiff alleges that Defendant created a hostile work environment and discriminated against him based on his race and national origin in violation of § 1981. Section 1981 guarantees, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State…to make and enforce contracts,…and to the full and equal benefit of all law and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As the Second Circuit recently made clear, "§ 1981 does not provide a separate private right of action against state actors" apart from § 1983, and any allegations against such entities must therefore be brought pursuant to the latter provision. *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). Consequently, Plaintiff's claims pursuant to § 1981 are dismissed as a matter of law.

### II. Plaintiff's Hostile Work Environment and Discrimination Claims under § 1983

When the defendant sued under § 1983 is a municipality, "the plaintiff is required to

show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 690 (1978) ("[T]he language of § 1983, read against the background of the [provision's] legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation," rather, it is adequate to show "that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Patterson*, 375 F.3d at 226 (internal quotation marks and citations omitted). A policy, custom, or practice may also be inferred in a case where the municipality so failed to train or supervise "its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). Municipal liability "cannot, however, be premised on a theory of respondeat superior." *Patterson*, 75 F.3d at 226.

In his motion papers, Plaintiff contends that H+H displayed a deliberate indifference towards his constitutional rights by outsourcing its nutrition services at Harlem Hospital to Sodexo, when "it is a notorious fact that in 2010, Sodexo was fined $20 million by the State of New York in connection with its fraudulent violations" related to providing lunches at New York public schools. Pl.'s Brief at 6. According to Triana, it was therefore "clearly foreseeable" that Sodexo employees like Wilcox and Shivers, left unsupervised, would engage in illegal conduct towards persons such as himself. *Id.*

Even if the Court assumes, based wholly on Triana's statement, that Sodexo was liable

10

for the aforementioned fraudulent conduct, Plaintiff's argument is unavailing. To begin with, H+H hired Sodexo at Harlem Hospital prior to 2010, so H+H would have lacked any knowledge at the time of Sodexo's hiring that it was engaged in a lunch fraud involving New York's public school system. *See* Dkt. 91, Ex. D, Shivers Deposition at 8-9. More importantly, Plaintiff produces no evidence that this fraud involved hostile work environment or employment discrimination, and it is therefore unclear how it would be "obvious" to H+H that Sodexo would threaten such rights of its employees. *Vann v. City of New York*, 72 F.3d 1040, 1051 (2d Cir.1995) ("To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious."); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Most fundamentally, however, Plaintiff points to no evidence in the record demonstrating that H+H's policymakers failed to train or supervise specific employees like Wilcox and Shivers so "as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Kern*, 93 F.3d at 44 (internal quotation marks omitted). To establish such a claim, Triana must show (1) that such "municipal officials with final policymaking authority had notice of the illegal conduct; (2) that the need for corrective action was 'obvious'; and (3) that officials nevertheless chose to ignore the issue." *Chin v. New York City Housing Auth.*, 575 F. Supp. 2d 554, 563-64 (S.D.N.Y. 2008) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004)). As Plaintiff himself testified, he never filed a grievance or alerted his supervisors at H+H about Wilcox and Shivers's purportedly discriminatory conduct. *See* Triana

Deposition at 11-13 ("Q: Have you ever made a grievance against H+H or anyone else while employed at H+H? A: No."). Nor does he point to anything in the record indicating that any policymakers at H+H—none of whom Plaintiff names or refers to—were somehow aware that Plaintiff was being discriminated against. *See Chin*, 575 F. Supp. at 566 (rejecting Plaintiff's claim where "Plaintiff ha[d] utterly failed [] to produce any evidence that the NYCHA's Board of Commissioners had notice of even potentially illegal conduct"); *Amnesty Am.*, 361 F.3d at 128 ("[P]laintiff's evidence must establish [] that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction.") (internal quotation marks omitted). In turn, there would have been no "obvious need" on H+H's part to take "corrective action" to address the allegedly discriminatory behavior at issue. *Cf. Amnesty America*, 361 F.3d at 128 (finding plaintiffs' evidence created a genuine issue of material fact where "the evidence allow[ed] the inference that [the policymaker] himself witnessed (and perhaps encouraged) the unconstitutional conduct, and that the conduct was so blatantly unconstitutional that [his] inaction could be the result of deliberate indifference to the protesters' constitutional rights").

Because Plaintiff has not demonstrated that H+H should be held municipally liable for Wilcox and Shivers's actions, his § 1983 discrimination and hostile work environment claims are dismissed.

### III. Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges that Wilcox and Shivers violated his First Amendment right to freedom of speech by retaliating against him for two separate speech acts. First, Plaintiff contends that,

12

after he refused to issue a statement against fellow dietician Maria Bryant in March 2014, Wilcox and Shivers made his job evaluations monthly rather than every ninety days and began to more frequently criticize his work. Second, Plaintiff asserts that, after complaining to these individuals in May 2014 that patients' tube-feedings were delayed, Wilcox and Shivers falsely accused him of leaving work late because he was selling nutritional supplements and gave him increasingly negative performance reviews.

Where a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he or she must demonstrate that "(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). Akin to § 1983 claims for employment discrimination and hostile work environment, the plaintiff is required to show that a municipality's challenged acts were implemented pursuant "to a municipal custom or policy." *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (quoting *Monell*, 436 U.S. at 658). And, as explained in the previous section, when a non-policymaker is accused of First Amendment retaliation, this policymaker must have "ordered or ratified such a subordinate's conduct or was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.*

As with Triana's employment discrimination and hostile work environment claims brought under § 1983, Plaintiff points to no evidence in the record that policymakers at H+H were aware of the purportedly retaliatory measures allegedly taken against him by Shivers and Wilcox. Indeed, Plaintiff testified that he never "complain[ed] to anyone at HHC" about the delayed tube feedings. *See* Triana Deposition at 736; *see also* Pl.'s Responses and Objections to

13

Def.'s 56.1 Statement ¶ 24 ("Plaintiff never made a complaint to anyone employed by H+H that he was being treated differently because he made a complaint about tube feedings."). Accordingly, Plaintiff's First Amendment retaliation claim is dismissed.

**IV. Plaintiff's FLSA and NYLL Claims**

Plaintiff alleges that, in violation of the FLSA and NYLL, Defendant failed to pay him overtime from August 2013 to sometime in 2014. Triana further contends that, during this time period, Wilcox and Shivers would demand that employees work late, but instruct them to falsely enter into their time sheets that they had gone home when their official shift ended.[3]

The FLSA requires that "for a workweek longer than forty hours," an employee who works in "excess of forty hours" shall be paid for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Therefore, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "New York Labor Law § 160...is analogous to the FLSA's overtime provision." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 276 (S.D.N.Y. 2008).

Here, it has not been disputed that Plaintiff worked five days a week from 7 a.m. until 3 p.m. Consequently, if, as he alleges, Triana worked past 3 p.m. (and came in at 7 a.m.), he should have been compensated for any such extra hours under the FLSA and NYLL.

Nevertheless, as the Second Circuit has made clear, "[t]o plead a plausible FLSA

---

[3] In his complaint, Plaintiff also alleged that Defendants failed to post notices of the FLSA and NYLL at Harlem Hospital and maintain written contemporaneous records of Triana's hours. *See* Complaint at 13. Because Plaintiff does not address these claims in his motion papers, however, the Court considers them to have been abandoned. *See Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786 (RMB)(THK), 2010 WL 1948322, at *12 (S.D.N.Y. May 10, 2010).

14

overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Such detail must include at, the very least, "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 114 (2d Cir. 2013); *see also Dejesus v. HF Mgmt. Services, LLC*, 726 F. 3d 85, 89 (2d Cir. 2013) (rejecting a plaintiff's FLSA claim where she did not "estimate her hours in any or all weeks or provide any other factual context or content"). Thus, a plaintiff is "reasonably expected to recall basic facts about his own work experience, such as when he worked overtime; whether he came to work early, stayed late, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed during his overtime hours." *Fridman v. GCS Computers LLC*, No. 17-CV-6698 (RWS), 2018 WL 1581990, at *4 (S.DN.Y. March 27, 2018) (internal quotation marks omitted).

Here, Plaintiff has not cleared this minimal hurdle. First, he does not point to any particular date, or estimate how many dates, in which he worked over 40 hours. *See* Triana Deposition at 526 ("Q: Is there any way of telling on what day you worked and the hours that you worked that you were not paid for?" A: "There were many, but I don't remember now."); *see Azeez v. Ramaiah*, No. 14-CV-5623 (PAE), 2015 WL 1637871, at *6 (S.D.N.Y. Apr. 9, 2015) (Plaintiff failed to state an overtime claim under the FLSA where he had "not identified 'a single workweek' between December 17, 2012 and March 6, 2014 'in which [he] worked at least 40 hours and also worked uncompensated time in excess of 40 hours,' or a single day on which he worked more than 10 hours." (quoting *Lundy*, 711 F.3d at 114)); *see also Boutros v. JTC Painting and Decorating Corp.*, 989 F. Supp. 2d 281, 283 (S.D.N.Y. 2013) ("[P]laintiffs

15

bringing an FLSA overtime claim must allege not merely that they *typically* worked unpaid overtime, but must *specify at least one week* in which they worked overtime hours but were not paid overtime.") (citing *Lundy*, 711 F.3d at 114) (emphases in original). Nor does Plaintiff try and assess how many total extra hours he may have worked, or provide "a rough estimate of the [overtime] wages [he] claims to have earned during [his] employment with Defendants." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 424 (S.D.N.Y. 2017); *Fridman*, 2018 WL 1581990, at *4 (while, to recover under an FLSA claim, calculating one's uncompensated overtime hours does not demand "mathematical precision" or the production of "complete documentary records regarding the hours" one worked, a plaintiff's allegations could not succeed where he simply alleged that he "'routinely' worked a total of ten or more hours over forty hours per week"). Indeed, Plaintiff does not even provide an approximation of when, roughly, in 2014 these alleged pay violations ceased. *See* Pl.'s Responses and Objections to Def.'s 56.1 Statement ¶ 131 (stating that Defendants had not produced any viable records "to demonstrate that they paid Plaintiff for any overtime from September 2013 to whenever it was that Plaintiff stopped working overtime in 2014").[4] Rather, in his testimony, Plaintiff only specified that there "were a lot" of overtime hours for which he was not compensated. *See* Triana Deposition at 524.

In support of his allegation that employees like himself were told by Shivers and Wilcox to create false time entries, Defendant points to an affidavit of former dietician Sharon Isaac, which alleges that Wilcox and Shivers insisted that dieticians "enter in the official log the time we were supposed to sign in," even where they had worked extra hours. Dkt. 98 ¶ 6. But Plaintiff does not say how often, if ever, he was pressured to manipulate his own time entries. *See Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y.2002) ("Mere conclusory

---

[4] H+H did indeed produce detailed employment records, with time entries in August 2013 showing that Triana received overtime pay. *See* Dkt. 91, Ex. EE, at 3.

statements, conjecture or speculation cannot by themselves create a genuine issue of material fact."). Nor does Triana point to any evidence in the record that he was personally pressured by Wilcox and Shivers to engage in such conduct. *See Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 569 (S.D.N.Y. 1993) ("[T]o oppose a motion for summary judgment one must actually present some evidence, either affidavits, documentary evidence, or prior testimony, that indicate that an issue of material fact remains.").

Because Plaintiff has not provided enough detail to satisfy his claim that he was wrongly denied overtime pay, his FLSA and NYLL claims must be dismissed.

### V. Plaintiff's State Law Claims

"When all of a plaintiff's federal-law claims are dismissed before trial, as here, a district court has discretion not to assert supplemental jurisdiction over any remaining state-law claims." *Kevin P. Downey & Andrea Bonner v. Adloox Inc. and Adloox*, No. 16-CV-1689 (JMF), 2018 WL 5266875, at *9 (S.D.N.Y. Oct. 23, 2018). Usually, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over [such] claims." *Id.* (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (internal quotation marks omitted)). As "'the substantive standards'" for asserting a claim that one is entitled to overtime pay under the NYLL and FLSA "'are coextensive,'" it made sense to resolve Plaintiffs' NYLL claims for the sake of "judicial economy and convenience." *Id.* (quoting *Caesar v. Riverbay Corp.*, No. 15-CV-8911 (NRB), 2017 WL 6887597, at *12 (S.D.N.Y. Dec. 27, 2017)). But the remaining state law claims, which allege violations of the NYCHRL and various NYLL retaliation provisions, and which cannot be precluded pursuant to § 1983 municipal liability, must be independently

evaluated. Because "the Court has not yet invested resources necessary to resolve" these claims, *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp.2d 359, 394 (S.D.N.Y. 2013), it declines to exercise supplemental jurisdiction over Plaintiff's claims under the NYCHRL and NYLL §§ 215, 740, and 741. Accordingly, these claims are dismissed without prejudice.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully requested to terminate item 90 on the docket and to close the case.

SO ORDERED.

Dated: December 5, 2018
New York, New York

Ronnie Abrams
United States District Judge